# Carrigan's Estate.

*Wills—Construction—Trust and trustees—Income—Grandchildren sharing in income.*

Testator in his will created a trust in favor of his wife for life, and after her death in favor of his children, and after the death of the survivor of them, the estate to go to his grandchildren per stirpes. He further directed as follows: "Should any of my said children die unmarried and without lawful issue then the income share of such child deceased shall go to my remaining children for life and my grandchildren shall take such share of said deceased children as their deceased parent would be entitled to (the intention of this my last will being that my wife enjoy the income of my estate during her life, that my children shall enjoy said income after my wife's death for and during their lives and that my grandchildren shall get the corpus of the estate per stirpes and not per capita)." *Held,* that the children of a deceased child were entitled to share in the income until the termination of the trust.

Argued Nov. 2, 1916. Appeal, No. 278, Oct. T., 1916, by Mary H. Rainsford, from decree of O. C. Philadelphia Co., Jan. T., 1916, No. 186, sustaining exceptions to adjudication in Estate of Peter Carrigan. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Exceptions to adjudication.

ANDERSON, J., filed the adjudication which was as follows:

The testator died December 11, 1914, having first made and executed his last will and testament, duly admitted to probate, whereby, after directing the payment of his just debts and funeral expenses and a gift of his business to his son John (which, however, as appears from the petition for distribution annexed, testator disposed of in his lifetime), he gives the residue of his estate to his son John and his wife Ellen as trustees, to pay the net income to be derived therefrom to his said wife during

life and upon her death to pay over the net income to his six children, to wit: John I., Amelia, Mary E., Helen, James and Joseph R., in equal parts share and share alike for and during the term of their natural lives and upon the decease of all of his said children directed his trustees to divide his said estate in six equal parts and pay over to the children of his son John one part thereof, to the children of his daughter Amelia one part thereof, to the children of his daughter Mary E. one part thereof, to the children of his daughter Helen one part thereof, to the children of his son James one part thereof, and to the children of his son Joseph one part thereof.

He then further provided as follows:

"Should any of my said children die unmarried and without lawful issue, then the income share of such child deceased shall go to my remaining children for life and my grandchildren shall take such share of said deceased child as their deceased parents would be entitled to. (The intention of this my Will being that my wife enjoy the income of my estate during her life, that my children shall enjoy said income after my wife's death for and during their lives, and that my grandchildren shall get the corpus of the estate, per stirpes and not per capita)."

Testator's wife Ellen survived him, and by writing duly recorded elected to take against his will the interest in his estate to which she is entitled under the intestate laws.

Testator's son, Joseph R., died in his lifetime, unmarried and without issue.

Testator's son, John, also died in his lifetime, leaving surviving four children, Helen B. Fries and Charles P., Jessie N. and Marguerite Carrigan.

Testator's daughter, Mary E., also died in his lifetime, leaving her surviving two children, Mary H. Rainsford and Charles S. Johann.

Testator's son, James A., died February 12, 1916, unmarried and without issue, and letters of administration c. t. a. on his estate were granted to Amelia R. Fleming.

Testator's children, Amelia R. Fleming and Helen M. Allen, are still living.

The widow having elected to take under the intestate laws she is entitled to her share of the principal of the personal estate absolutely; and her election being equivalent to her death (Vance's Est., 141 Pa. 201,) the provisions of the will to take effect at her death are now effective as to the balance of the estate.

It was conceded by all parties in interest that under Wilen's App., 105 Pa. 121; Aubert's App., 119 Pa. 48, the corpus of the estate must be held in trust until the death of testator's last surviving child. The question arises, however, as to the proper distribution of income in the meanwhile, four of testator's children being deceased, two leaving issue and two without issue. It was contended on behalf of testator's two remaining children that they are now entitled to the entire income from the trust estate on the ground that the testator had expressly directed the payment of the income to his children and to them only. On the other hand, it was contended that the share of income of those of testator's children who died leaving issue should go to such issue.

It is well settled that a testator's intention is to be gathered from his whole will or, as has been said, from its four corners: Hermann's Est., 220 Pa. 52. But when we come to consider a will and interpret its meaning we must do so in the light of all the circumstances surrounding the testator, his family, the amount and character of his property: Stambaugh's Est., 135 Pa. 585. Nor is an heir to be disinherited except by express devise or necessary implication; and that implication has been defined to be such a strong probability that an intention to the contrary cannot be supposed: Bender v. Dietrick, 7 W. & S. 284; Simpson's Est., 245 Pa. 244.

At the time testator made his will his wife and his six children were living. He directed his entire estate to be held in trust for the benefit of his wife. After her death he directed the income to be paid to his six children,

naming them, in equal shares during the term of their natural lives, and upon the death of all of them provided for the distribution of the principal of his estate. He had, however, in case of the successive deaths of his children, made no direct disposition during the remaining life of the trust of the share of income his children were respectively entitled to during life. He certainly contemplated that each of his children would marry and have issue, for at the termination of the trust he gave one share of his estate to the children of each of his children nominatim. But there then occurred to him the possibility of children remaining unmarried and without issue, and contemplating that contingency he provided:

"Should any of my said children die unmarried and without lawful issue, then the income share of such child deceased shall go to my remaining children 'for life and my grandchildren shall take such share of said deceased child as their respective parents would be entitled to."

It is a well settled principle that a gift over upon default of issue is an implied gift to issue: Seybert v. Hibbert, 5 Pa. Superior Ct. 537; Beilstein v. Beilstein, 194 Pa. 152; Crossman's Est., 24 D. R. 600. Having provided for the distribution of his estate after the life of the trusts the gift over of income is necessarily predicated upon default of issue during the pendency of the trust; in other words, a definite failure of issue. This is also in accord with the Act of July 9, 1897, P. L. 213. The auditing judge is not convinced that the intention of the testator as expressed in the clause following, namely, that his children should have the income and his grandchildren the corpus, was to exclude the grandchildren from taking the income which their parents enjoyed. To his mind the testator's thought was that the income of a deceased child leaving children would necessarily go to those children, and therefore only provided in terms what should be done in case a deceased child left no children or issue. Otherwise the whole clause

would be unnecessary and meaningless. He could in less words and clearer terms have provided that the income of any child should upon death go to the remaining children.

If the contention of the surviving children is sustained it would follow that, although the child first dying left issue and all the remaining children never married and all died but one, the whole income would go to the last survivor as long as he lived. In a doubtful case the courts favor that construction of a will which consistently with the words of the instrument, will result in a distribution in conformity to the general rules of inheritance: Lehman v. Lehman, 29 Pa. Superior Ct. 60. The auditing judge is clearly of opinion that the testator did not intend by the statement that "my children shall enjoy said income after my wife's death for and during their lives" to deprive his grandchildren of the right to that portion of the income to which their parents were entitled; but that this declaration of intention was merely a resumé in general terms of what he had already specifically done.

And this interpretation, which gives to the children of those who died leaving issue their parent's share, is considerably strengthened by the fact that the testator has provided what shall be done with the shares of those who have died without issue and which is to go "to my remaining children for life and my grandchildren shall take such share of said deceased child as their respective parents would be entitled to"—words utterly incomprehensible unless the words "if living" be supplied. To effectuate the general intent of a testator words may be added, altered or rejected: Duffield v. Morris, 4 P. L. J. 791; Schott's Est., 78 Pa. 40; Hellerman's App., 115 Pa. 120. "My grandchildren"—the children of a child leaving issue—"shall take such share of said deceased child" —naturally one who died unmarried and without issue —"as their respective parents would be entitled to" if living. Manifestly, "their respective parents" are the

264, (1917).]  Adjudication—Opinion of the Court.

parents of the grandchildren and not the parents of "said deceased child."

The auditing judge accordingly holds that the share of income enjoyed by testator's children, or his living issue, is distributable to the issue, and the share of those who died unmarried and without issue is distributable during life to the remaining children of testator, the children of those who died leaving issue taking their parents' share.

The court sustained exceptions to the adjudication.

*Error assigned* was in sustaining exceptions to adjudication.

*Owen J. Roberts,* with him *J. W. McWilliams,* for appellant.—It is the contention of the appellant that the children of the testator's daughter, Mary, now deceased, are entitled to the share of the income to which their mother would have been entitled if living: Seybert v. Hibberd, 5 Pa. Superior Ct. 537; Beilstein v. Beilstein, 194 Pa. 152; Grossman's Est., 24 D. R. 600; Lehman v. Lehman, 29 Pa. Superior Ct. 60.

*Joseph Taulane,* of *White, White & Taulane,* for appellee.

OPINION BY HENDERSON, J., November 19, 1917:

The contention between the parties in this case arises out of the construction of a part of the will of James Carrigan. The testator created a trust in favor of his wife for life and after her death in favor of his children and after the death of the survivor of them the estate to go to his grandchildren per stirpes. The controversy grows out of the following provision of the will: "Should any of my said children die unmarried and without lawful issue then the income share of such child deceased shall go to my remaining children for life and my grandchildren shall take such share of said deceased

children as their deceased parents would be entitled to (the intention of this my will being that my wife enjoy the income of my estate during her life, that my children shall enjoy said income after my wife's death for and during their lives and that my grandchildren shall get the corpus of the estate per stirpes and not per capita)." The widow elected to take against the will and the remainder of the estate not thus disposed of is now subject to the provisions of the will which were to take effect at her death. One of the testator's sons died in the lifetime of his father unmarried and without issue; another died in his lifetime leaving four children to survive him; a daughter, Mary, died in his lifetime leaving two children surviving her, one of whom is the appellant. A son died after the death of the testator and his two children are still living. The controversy relates to the distribution of the income of the estate, the surviving children claiming they are entitled to all of it and the appellant claiming she is entitled to participate therein under the will of her grandfather. The Orphans' Court held that the surviving children took the whole income, that conclusion being reached by the construction given to the parenthetic clause in the portion of the will above quoted. The will provides that the income of a child dying unmarried and without lawful issue shall go to the surviving children, but this does not include the income to be received by a child married and having lawful issue who may die. As to such share there is an implication of the testator's intention that the children of a deceased child should take the parent's share, such implication arising from the provision with respect to the income share of children dying without lawful issue living. If the testator had intended to give to the surviving children all of the income of his estate he would not have made the special provision with respect to the shares of those dying without issue. But the case does not depend wholly on this implication, as appears from the provision with reference to grandchildren who are to

take such portion of the income as their respective parents would be entitled to. The subject of the whole period is "the income share" and the language quoted is sufficient to show an intention to place the children of a deceased child in the place of their parent. The provision of the will relating to this subject follows the disposition of the whole estate made in the preceding portions of the will. After he had disposed of all his property the testator taking into consideration the fact that his children would not all survive to the same time provided for the disposal of the income of those who would die unmarried and without issue, and in doing so took account of his grandchildren. The ultimate remainder was already disposed of by the clear terms of the will. "The income share" was the particular subject in the testator's mind in making this provision. The income of children dying unmarried and without issue would, of course, go to the survivors. These survivors were the living children and the children of deceased children who are made by the will to stand in the place of "their respective parents." We are not convinced that the parenthetic clause following the disposition of the income shares of children dying unmarried and without issue was intended to or does change the effect of that which precedes it. . It is by its terms a statement of the general scope of the will which was a life estate in the income to his wife and after her death the income to his children and after their death the remainder over to his grandchildren. There is here no evidence of a purpose to change the special provision with reference to the income shares of the children dying nor to take account of them. There was a complete disposal of the whole estate and the parenthetic clause only declares the general purpose of the testator. We think it clear that there is no express provision of the will under which the surviving children of the testator are entitled to the income bequeathed to a child dying with issue surviving and if this view be correct the provisions of the will are more

consistent with the construction which places the children of the surviving son or daughter in the place of their parent with respect to the income estate. If the case were doubtful a construction should be favored which would result in a distribution in conformity to the general rules of inheritance: Long's Est., 228 Pa. 594; Lehman v. Lehman, 29 Pa. Superior Ct. 60. It is unnecessary to discuss the case at length. This has been done by the learned judges in the court below. The conclusion of the auditing judge we consider to be the correct construction of the testator's will.

The decree of the Orphans' Court is, therefore, reversed and the record remitted with direction to make distribution in accordance with this opinion.