## Patterson's Estate.

Argued December 9, 1938. Before Kephart, C. J., Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

Frank Streeper, Jr., with him Romain C. Hassrick, for appellants.

Wm. A. Schnader and Joseph S. Lord, III, for appellee, were not heard.

OPINION BY MR. CHIEF JUSTICE KEPHART, January 9, 1939:

Robert Patterson died in 1893, and by his will gave the benefit of a trust fund of $150,000 to Ursinus College. His heirs instituted proceedings in the Orphans' Court for a citation to the testamentary trustee to file an account, and for termination of the trust. The provision of the will which brought about this proceeding reads as follows: "Provided that in the event of the said Ursinus College being dissolved or ceasing to exist as a corporation or in the event of the failure of the officers and faculty of the College to truly and faithfully teach, maintain and carry out Evangelical Reformed principles the said trust shall be equally divided among the heirs at law of my said wife and of myself, share and share alike."

The heirs claimed that Ursinus College was not carrying out the purposes of the trust. The court below found to the contrary, hence this appeal.

We will not retry this case; the findings of the court below are well supported by evidence and are binding on us: Pusey's Estate, 321 Pa. 248, 260. But if, as there stated at p. 261, there is no evidence to support them, or, if it appears from the record that there is capricious disbelief of the evidence, then the findings are worthless. Appellants argue that the inferences from the evidence, and the lack of proof to the contrary, show the purposes of the trust to be violated. Where an effort is made to terminate a trust because its purposes are not being car-

ried out as the testator or settlor directed, the burden of proving such noncompliance by clear evidence is on the moving party. There must be a persistent and consistent failure, and one that shows an utter, wilful disregard of the purposes.

Here appellants seek an interpretation of the will beyond any reasonable concept of what testator had in mind. Their contention would so restrict the court below in its interpretation of the will that the purpose of this provision could only be carried out by teaching denominationalism. While we gather testator's intention from the entire will, its meaning where doubtful as applied to a specific bequest must be arrived at in the light of all the circumstances by which testator was surrounded when he wrote his will and by which he was probably influenced: *Stambaugh's Estate,* 135 Pa. 585, 597; *Gilmor's Estate,* 154 Pa. 523, 530; *Frisbie's Estate,* 266 Pa. 574, 578; *Carrigan's Estate,* 68 Pa. Superior Ct. 264, 266. As was said in *Sterrett's Estate,* 322 Pa. 300, at p. 302: "Words have various recognized meanings, and if employed by a testator with particular reference to special circumstances, will be given the meaning intended; if necessary, the court may receive proof of the circumstances to determine the sense in which the words were used." Before and at the time decedent made this will, and until his death, he was a member of the Board of Directors of Ursinus College. He was interested in, and familiar with, all phases of the college life, and there is ample testimony to show that the institution is carried on today much the same as it was then.

Nowhere in testator's will does he make the statement that Ursinus must teach the denominationalism of the Reformed Church. It appears in the testimony that there was no single denomination known as the "Evangelical Reformed Church" in this Commonwealth at the time the will was drawn. From all the facts which are before us we conclude testator did not mean that the

"Evangelical Reformed principles" which appellee was to carry out were to include the technicalities and refinements of degrees of government which distinguish the several churches and denominations following these principles; but rather that it was the general spirit of the evangelical reformed principles, derived from the Heidelberg Catechism, which he wanted taught, maintained and carried out in some way. His only interest is that these evangelical reformed principles should be conveyed to the students, or an opportunity be given to receive them, but not necessarily through the pathway of denominationalism.

The college has always been nondenominational in its instruction, and if testator had desired to make any change in the college curriculum through his bequest, certainly he would have so stated.

At this time, 14 of the 21 members of the Board of Directors, and all the board's officers are members of the Reformed Church; the college reports periodically to the Synod; the college pastor is a member of the Reformed Church. Many members of the Board, and instructors, are ordained ministers of the Reformed Church; the official publication of the Evangelical and Reformed Church, "The Messenger," in an article in 1937 recognizes and represents to the public that Ursinus is one of "Our Colleges and Seminaries."

The college has always received students regardless of denomination from the time of its foundation; there has been no change in the college attitude toward religious matters since the date of the will. The pastor devotes special time to interviews with students, and is available for consultation with them. There are daily chapel services, and no divergence in the type of these services since at least 1881. Every summer, religious conferences are held under the auspices of evangelical protestant churches. The recent merger of the Reformed Church in the United States with the Evangelical Synod of North America, under the name of the Evangelical

and Reformed Church, does not affect the principles of the Reformed Church or the college's relation to that church. All these factors indicate a compliance with the general intent of testator by maintaining an environment in which ample opportunity is afforded the students to receive those principles he desired the college to advance.

It should be considered, further, in interpreting this will, that we have before us a forfeiture clause which would terminate a charitable trust. Decedent's prime desire was to benefit the college, and not to benefit the heirs. If the latter had been his more important motive, he would have given the estate to them originally. Thus, in *Davis's Estate*, 275 Pa. 126, the rule is concisely stated at p. 130: " 'Whether there has been a performance or breach of a condition precedent, or of a condition subsequent, depends upon a construction of the condition, a reasonable construction to be given in favor of the beneficiary and a strict construction against a forfeiture, and upon the circumstances of the particular case.' "

Appellants' evidence does not disclose that the college is not teaching, maintaining and carrying out evangelical reformed principles, and the burden was on them. Their witnesses were not acquainted with the true meaning of these principles. Certainly, their testimony was not of such weight as to destroy the charitable trust, and sustain the contention that this seat of learning has abandoned the religious principles to which it had subscribed for many years.

We can see no merit in the appeal, and agree with the court below that even if appellants' testimony stood alone, the adjudication would have been against them, since it was insufficient, in weight and character, to compel a forfeiture. The evidence offered by appellee, in both quantity and quality, was clearly sufficient to sustain the findings that the college was still carrying out testator's intentions.

Decree affirmed.