**Bostwick Trust**

*W. LeRoy McKinley*, for accountant and Lovett Memorial Free Library.

*James A. Montgomery, Jr.*, and *John G. Bartol, Jr.*, for City of Philadelphia.

*William E. Lingelbach, Jr.*, for contingent remainderman.

*Ralph C. Donohoe*, for *Harrington Adams*, Acting Attorney General, in his capacity as parens patriae of charitable trusts.

BOLGER, J., September 16, 1959.—By deed dated February 6, 1888, and supplemented December 28, 1891, and December 27, 1898, settlor conveyed a certain building at the corner of Germantown Avenue and Sedgwick Street, Philadelphia, and the land on which it was situated and $25,000 to the accountant in trust;

"FIRST: As to the real estate above described To allow the same to be used, occupied and enjoyed for all time by 'The Memorial Free Library' a library established by the said Charlotte Bostwick upon the

said premises as and for a free library and so long only as the said The Memorial Free Library shall be maintained upon the said premises.

"SECOND; As to the said personal estate hereby assigned IN TRUST to invest and keep invested the same and after paying all charges thereon and the necessary and proper expenses of this trust to pay the net income thereof to the Treasurer of the *said* THE MEMORIAL FREE LIBRARY for the uses thereof."

By a later deed dated June 21, 1895, settlor conveyed to the trustee the land contiguous to the library building, a separate accounting of which land and the proceeds of sale of a portion thereof has been filed and will be adjudicated simultaneously with the filing of this adjudication. In that adjudication reference to the problem which has been presented to the court and the solution will be made, but the problem and determination will not be set forth in extenso.

Settlor died May 6, 1899. During her lifetime the Memorial Free Library known as The Lovett memorial Free Library was incorporated as a first class corporation. This corporation is still in existence.

Settlor directed in item three of the deed dated February 6, 1888, in part as follows:

"If at any time the said THE MEMORIAL FREE LIBRARY should cease to be maintained upon the said premises or should be removed therefrom . . . principal of this trust estate both real and personal and all income accrued thereon to the person or persons who would be entitled thereto if the said Charlotte Bostwick had died at that time intestate seised and possessed hereof in fee and in default of any such person or persons so entitled under the acts relating to the estates of intestates . . . to . . . THE GERMANTOWN DISPENSARY AND HOSPITAL . . . to and for the uses of the Endowment fund thereof."

656

At the audit testimony was presented to show that for several years income from the present fund and the fund for which a separate account has been filed has been insufficient to maintain the library and that the Trustees of the Free Library of Philadelphia have been meeting the deficit annually. It was also estalished that there is urgent need for adding to the present library building itself, which extension is proposed to be made in part on the land conveyed by the deed of June 21, 1895. Funds to make these necessary improvements are not available out of income or principal of the trust.

The trustee requests authority to convey the necessary land to the City of Philadelphia on the condition that the Trustees of the Free Library of Philadelphia will supply the necessary funds to extend the library building and make the repairs to the present premises and continue to maintain the library. The agreement further provides that the personal estate shall remain in the hands of the present accountant and that the income shall continue to be paid to the treasurer of The Lovett Memorial Free Library which expends the income for the benefit of the library, which shall continue to be known as "The Lovett Memorial Free Library."

There are presently three next of kin of settlor, viz., two grandnieces and a grandnephew. By writings annexed, all of them have consented to the proposed agreement.

The Germantown Dispensary and Hospital opposes approval of the agreement and takes the position that since it is impossible for the library to be maintained because of insufficient funds, there has been a failure of the primary purpose of the trust and, therefore, it is now entitled to receive distribution of principal. It should be noted in particular that under the proposed agreement, although title to the real estate is to

be taken in the name of the City of Philadelphia, there is an express reverter to the accountant or its successor in trust should the city fail to enter into a construction contract within a reasonable time or should the Trustees of the Free Library of Philadelphia fail to maintain a free library on the premises, or in any way breach any other condition of the agreement. It should further be noted that since 1924, the Trustees of the Free Library of Philadelphia have not merely assumed a substantial portion of the costs of operating the library, but have acted as librarian and administrative agent for the library. Under the agreement, the Free Library of Philadelphia would assume complete control and management of the library.

The Germantown Dispensary and Hospital in its brief has maintained that the gift over to the "person or persons who would be entitled thereto if the said Charlotte Bostwick had died at that time intestate", is void under the rule against perpetuities.

It is unnecessary to decide this question in view of the consent of the living heirs of Charlotte Bostwick that the agreement with the city may be consummated. It is also unnecessary to determine the effectiveness of the gift over to the hospital following the allegedly void gift in remainder to the heirs should the library cease to be maintained for reasons more fully set forth hereafter. This adjudication is, therefore, without prejudice to such rights as the heirs or hospital may have in remainder should a forfeiture subsequently be found.

It is further contended that a transfer of title to the city would be an improper delegation of the trustee's responsibiliy.

The point at issue is the conveyance by the accountant of title to the land to the City of Philadelphia. Such a transfer is required, since it is unlawful for the city

to expend money to improve land which is not owned by it.

It is clear, after a careful study of the deed of trust, the amendments and the later deed of 1895, that settlor intended that the library which had been created during her lifetime was to be maintained.

This primary intention is crystal clear. Settlor did not direct the accountant to maintain the library. On the contrary she directed the trustee ". . . to allow the same (the land and building) to be occupied and enjoyed for all time by 'Memorial Free Library . . .'."

Settlor did not impose any affirmative duty on the accountant to expend the income from the personal property directly for the benefit of the library, but directed net income to be paid to the treasurer of the said "The Memorial Free Library for the uses thereof." Settlor expressly exonerated the accountant from any duty to "see to the application by the Treasurer or Managers thereof of the income of said trust estate after the same shall have been paid to the Treasurer as above provided, nor shall it be the duty of the trustees to keep the said premises in good condition and repair." The accountant has two affirmative duties: To hold title to the land for the benefit of the library and to pay the income to the corporation known as "The Memorial Free Library."

It is important to note that settlor. used the intransitive verb, ". . . if at any time the said Memorial Free Library should cease *to be maintained.*" (Italics supplied.) She did not limit maintenance of the library to the trust principal or income. This case approximates the intention to benefit the community at large by the continued maintenance of the library such as was demonstrated in Magee Estate, 1 D. & C. 2d 447. On pages 467-68, it was held:

"The board of trustees requests the authority of the court to accept funds from other sources from time to

time, because the will is silent as to the right of the trustee to accept funds from outside sources. The proposition poses the question of a possible distinction between an open end trust and a closed trust. Under the former a conveyor authorizes the trustee to accept other funds. In a closed trust it is a very serious question whether in the absence of such an instruction, additional funds can be added to the original res particularly from outside sources.

"However, in the instant case, the auditing judge is satisfied that the corporate fiduciary or the board of trustees, through its treasurer, is authorized under the will to accept other funds. It is quite obvious that Miss Magee desired this hospital to afford as much help as possible to the poor of Philadelphia and to the relief of all of the city's hospitals and that its facilities should be expanded and modernized to meet increasing and changing needs. Therefore, the auditing judge finds that there is implicit in the will authority to accept other money."

The deed, its amendments and the subsequent deed conveying other land, all manifest settlor's intention that no forfeiture could take place until a library was no longer maintained on the property. The increase in usefulness of the library due to the increase in population of the neighborhood results in an expanding use of the purposes for which the trusts were created. To now hold that the decrease in income and the inability of income to meet the increasing demands constitute a forfeiture would do violence to settlor's intention and would judicially defeat her primary purpose. The management of the library is a secondary consideration. In effect, it relates to administration and not to the primary purpose.

In considering the failure of a trust because a trustee named in an instrument is unable or unwilling to

administer the trust, Scott on Trusts, §399, p. 2779, states:

"The uncertainty may be removed by an appointment by the court of a trustee to administer the trust or by the framing of a scheme by the court. There is no principle of public policy which would require the trust to fail, and such failure would be contrary to the intention of the testator."

To the same effect is the decision in Girard College Trusteeship, 391 Pa. 434. The fact that the City of Philadelphia accepts title to the real estate does not defeat the intention of settlor since the taking of title is with the burden of carrying out the provision of the trust. A trust will be tailored for the purposes thereof and not to fit the trustee.

This court had a similar situation relating to a public square conveyed to the city on condition that it be maintained as a park: Girard Estate, 88 D. & C. 481. In that case, as in the present instance, the agreement by the city contained a reverter to the Estate of Stephen Girard should the city at any time fail to maintain the ground as a public park.

Although we are not involved in the application of the cy pres power, in Scott on Trusts, §401.4, p. 2872, it is stated:

"There is no difficulty in the application of the cy pres power to permit a deviation from a particular direction in the terms of the trust where it would defeat the general purpose of the settlor to enforce it."

The same chapter of Scott on Trusts cited with approval Jordan's Estate, 310 Pa. 401, in which there was a gift of income to a certain incorporated academy on the condition that should the corporation be dissolved or the academy go out of existence or should the trustees of the academy fail for five years to maintain a school in which certain subjects should be taught, income would then be payable to a certain church. The

academy was obliged to surrender its buildings. However, it entered into an arrangement with another institution wherein the prescribed subjects were taught. The trustees of the academy continued to function. The Pennsylvania Supreme Court refused to find a forfeiture.

In commenting on this case, Professor Scott says, page 2870:

"Even if there has been a breach of the condition, the court may refuse to decree a termination of the charitable trust and a forfeiture of the property if under all the circumstances it would be inequitable to do so. It has long been a function of a court of equity to give equitable relief against a forfeiture where the circumstances are such that there would be an undue hardship in enforcing a forfeiture."

See also Patterson's Estate, 333 Pa. 92, in which the Supreme Court cited page 96, Davis' Estate, 275 Pa. 126, as follows:

" ' "Whether there has been a performance or breach of a condition precedent or of a condition subsequent, depends upon a construction of the condition, a reasonable construction to be given in favor of the beneficiary and a strict construction against a forfeiture, and upon the circumstances of the particular case." ' "

So far as the hospital is concerned, its position as the executory devisee will be the same when the agreement is approved and carried into effect as it is today. It will not have lost any right to claim the fund if at any time the library is not maintained on the premises.

For the above reasons the objections of the Germantown Dispensary and Hospital are dismissed, the agreement is approved and the accountant is authorized to execute all necessary and proper deeds to carry out said agreement, provided that the terms and conditions of the conveyance are recited therein. . . .

662

And now, September 16, 1959, the account is confirmed nisi.