**Samuel Estate**

*W. H. Wells, Saul, Ewing, Remick & Saul,* for accountant.

*Morris H. Goldman* and *George B. Ross,* for claimants.

*Murray B. Dolfman,* for Commonwealth.

KLEIN, J., June 11, 1969.—J. Bunford Samuel died January 1, 1929, leaving a will in which he named Real Estate-Land Title and Trust Company (now Provident National Bank) and Moncure Biddle, executors and trustees. Moncure Biddle died September 30, 1956.

The present account was filed by the surviving corporate trustee and is trustees' fifth account. The present fund was awarded to the accountant by adjudication of Bolger, J., dated January 17, 1957.

Decedent in Paragraph Third of his will provided for the payment of annuities in varying amounts to 18 individuals. Of the original annuitants only Lois Samuel, age 67, and Dorothea Pelton Gusty, age 71, are living. They are each entitled to an annuity of $500.

Testator disposed of the residue of his estate in the following manner:

"TENTH. All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situated, I give, devise and bequeath unto the National Farm School at Doylestown, Bucks County, Pennsylvania, *as an endowment fund, the income therefrom to be used and applied in and about the upkeep of my farm, mill and forest property given to the said school.*" (Italics supplied.)

By virtue of amendments to its charter, the name of the National Farm School has been changed to Delaware Valley College of Science and Agriculture (hereinafter referred to as college).

The account and the supplemental account indicates that the current value of the corpus of the estate is $352,097.99 and an accumulation of income of

$197,593.69 or a total sum of $549,691.68. As this fund is obviously greatly in excess of the amount which is required to assure payment of the two annuities totalling $1,000, Morris H. Goldman, counsel for the college, requested the court to distribute to the college all of the funds held by the trustee after making provision safeguarding the payment of the annuities.

J. Bunford Samuel, testator, was the owner of about 60 acres of woodland property, upon which were situated an old mill, a wooden dam, a millpond and four small unimproved wooden houses, located in Spring Lake Heights, Monmouth County, New Jersey. On December 14, 1927, he conveyed to National Farm School at Doylestown, Pa., approximately 51 acres of this land and retained title to 9.2 acres, which passed to his trustees by the terms of his will when he died.

In 1932, Adolph Eichholz, a capable and highly respected member of the Philadelphia bar, was counsel for the farm school. He advised its board of trustees that Mr. Samuel's gift of the mill, farm and forest property was absolute and without condition or restriction and that the school had the right to sell all or any part of the property. Thereafter, the board of trustees, at various times, sold portions of the land, including the mill and the four houses. When the present account was filed, the college still owned approximately 34.5 acres of the original tract, including most of the woodlands. In 1966, 19.551 acres were conveyed to the board of education of the township of Wall for a consideration of $19,600. The remaining 15 acres of marshland are under agreement of sale for a price of $1,000 an acre to the township, for which settlement has not yet been completed.

At a hearing before the court held on January 14, 1953, in connection with the audit of a previous accounting, George B. Ross, counsel for John D. Samuel, a nephew of the testator, and Lois Samuel, a

grandneice, designated as an annuitant in the will, contended that the action of the college in selling a substantial part of the New Jersey property has made it impossible for it to carry out testator's clearly expressed intentions. He, therefore, argued that a failure of purpose resulted and the residue must be distributed under the provisions of the Intestate Act to testator's next of kin.

Because a considerable number of the annuitants were still living at that time, the disposition of the question was postponed to a future audit. We will dispose of it now.

The gift of the residue to the college was designated "as an endowment fund, the income therefrom to be used and applied in and about the upkeep of my farm, mill and forest property given to the said school."

Did the college by its voluntary act of selling most of the New Jersey real estate make it impossible for it to carry out testator's intention? Is it, as a result of the sale of the principal portion of the property, now estopped from receiving the fund given to it in the will? How can it use and apply the income "in and about the upkeep" of the New Jersey property, now that it has been sold? If the income cannot be used in the manner directed by the testator, what becomes of the fund? Who gets it? These are the questions raised by the ill advised acts of the predecessors of the present college trustees in disposing of the real estate without having first sought court approval, which it probably could have readily obtained.

To further complicate the situation a holographic paper prepared by decedent entitled "Directions For the Farm School" found in the files of the corporate trustee, has been placed in the record. Because of the document, it could be argued that testator may have regarded his New Jersey property as having a

special and unique character and may have intended that it be used as a public, historical park, to be maintained by the income earned by the trust created in the will. Decedent began this writing in the following manner:

"The Old Mill and Millers residence on top of Hill east of Mill are historical properties.

"The Mill residence dating from 1835 - some of the wooden shingles are hand hewn.

"The Mill itself is new. The Old Mill was situated further up the Dam — was burnt down — only the mill stone to mark where the old mill stood is left.

"Many Indian relics have been found near the mill.

"The Leni Lenape tribe — came from the Delaware River across New Jersey — and paddled their canoes to the Sea.

"The Old Mill property contained 24 acres including the Pond which covers about four acres.

"It is my desire that this Mill Property and Pond be left intact no more buildings to be placed on it.

"But the surrounding grounds — I should like to be laid out with Paths through the Woods — above and below the Dam. As a matter of fact this spot has always been a sort of Excursion place for Visitors up and down the Coast."

The rest of the document is rather rambling, replete with precatory expressions and ambiguous statements.

In the opinion of the auditing judge, this document is no more than a recitation by Mr. Samuel of some of his hopes and aspirations with respect to the New Jersey property and even as such, many of his statements are inconsistent and visionary. Moreover, he did not place any limitations or conditions upon the use of the property by the terms of his will and he made no reference therein to this writing nor did he

incorporate in his will any of the suggestions expressed in said writing.

The auditing judge has therefore concluded that the writing in question has no legal significance or bearing upon the question which is before us for decision.

Having concluded that the memorandum has no legal effect we will proceed to the next question which confronts us. Is the college by reason of its sale of the New Jersey real estate, estopped from now claiming the benefits of the trust created in the will? We think not.

We recognize that courts have held that a beneficiary may not by its own voluntary act produce changed conditions which frustrate the donor's clearly expressed intentions and still claim the gift through the application of the cy pres doctrine. See Connecticut College v. United States of America, 276 F. 2d 491 (1960), which quotes with approval from President and Fellows of Harvard College v. Jewett, 11 F. 2d 119 (1925).

If, for example, a donor in his lifetime gave a university a valuable art collection and in his will set up a trust fund to maintain the collection, grave doubt would be created whether the institution could still claim the fund if it sold the collection, with full knowledge of the provisions of the will, subsequent to donor's death and during the pendency of life estates.

It is well established, however, that the intent of the testator must be clear and unequivocal before a court should declare a forfeiture in a charitable trust. This view is succinctly stated in Bogert, Trusts and Trustees, 2d. Ed. §324, as follows:

"Courts of equity are notoriously hostile to conditions and the harsh forfeitures which they involve. They are also very desirous of applying property to the public benefit instead of to selfish purposes, where there is reasonable ground for such a decision.

It would seem that nothing short of the exact spelling out of the details of forfeiture and right to retake the property in the donor or his heirs would enable a donor to make effective his desire to have a condition subsequent."

In Patterson's Estate, 333 Pa. 92 (1939), one of the leading cases on the subject in this state, decedent's heirs sought to terminate a trust in favor of Ursinus College contending that the college was not carrying out the purposes of the trust as directed by testator. The Supreme Court sustained the decision of this court refusing to terminate the trust, holding that in determining whether there had been a breach of condition which will terminate a charitable trust, the condition is to be given a reasonable construction in favor of the beneficiary, and a strict construction against a forfeiture.

The courts will go to great lengths to prevent forfeiture of a charitable gift. In Howard Savings Institution v. Peep, 34 N. J. 494, 170 A. 2d 39 (1961), testator bequeathed money to Amherst College in trust as a scholarship loan fund "for deserving American born, Protestant, Gentile boys of good moral repute, not given to gambling, smoking, drinking or similar acts." The board of trustees of Amherst College declined to accept the trust funds unless the protestant-gentile restriction was eliminated from the terms of the trust for the reason that otherwise the trust would contravene the letter and spirit of the charter and policy of the college. The lower court upheld the gift by excluding the words "protestant" and "gentile." This was sustained by the Supreme Court of New Jersey which said at 34 N. J. 500-501, 170 A. 2d 42-43:

"The doctrine of cy pres is a judicial mechanism for the preservation of a charitable trust when accomplishment of the particular purpose of the trust becomes impossible, impracticable or illegal. In such

a situation if the settlor manifested an intent to devote the trust to a charitable purpose more general than the frustrated purpose, a court, instead of allowing the trust to fail, will apply the trust funds to a charitable purpose as nearly as possible to the particular purpose of the settlor. Wilber v. Owens, 2 N. J. 167, 177 (1949); Restatement, Trusts §399. . . ."

Although the language of the will in the present case is explicit that the residue of the estate is to be an endowment fund, the income to be applied "in and about the upkeep of my farm, mill and forest property given to said school," a study of the will and the circumstances surrounding its making clearly indicates that the testator's primary purpose was to benefit the college and only the college, and that his interest in having the New Jersey real estate retained by the college was merely incidental to his main purpose in creating the trust.

It seems evident that the land was not suitable for modern farming or for use for instructional purposes for the students of the college. It is also clear that it had no particular historical value or significance. We are satisfied that no useful or practical use could have been made of the income from this substantial estate in the "upkeep" of the "farm, mill and forest property" as directed in the will. Moreover, testator indicated that if the land were held it would enhance in value and could be sold advantageously for building lots. This negatives the suggestion that he seriously considered its use as an educational or training adjunct to the college.

The auditing judge, therefore, refuses to declare a forfeiture of the charitable gift to the college but will award the fund to be used for the purposes hereinafter set forth pursuant to a stipulation of counsel entered into on March 14, 1969, by counsel for all parties in interest. Said stipulation is approved by the audit-

ing judge and the entire balance of principal (account value), composed as stated, of $280,932.60 and income, composed as stated, of 197,593.69 making a total of $478,526.29 is awarded to Delaware Valley College of Science and Agriculture upon the following conditions:

(1) The entire balance of principal be held as a permanent endowment by the college, to be known as the J. Bunford Samuel Endowment, the income of which shall be devoted entirely to the furtherance and promotion of the program of the college in the field of agriculture and kindred subjects, including but not restricted to agronomy, animal husbandry, dairy husbandry, poultry husbandry, horticulture, ornamental horticulture, and food industry, and in the furtherance of such program in the broadest sense, including but not restricted to the giving of scholarships, faculty grants and salaries, and the upkeep of the facilities.

(2) The entire balance of income to be held as part of the general endowment of the college.

(3) The college continue the payment of the annuities to Lois Samuel and Dorothea Pelton Gusty in the increased amount of $750 each for the remainder of their respective lives.

(4) A dormitory building recently completed, which had cost in excess of $450,000 to construct, be named the J. Bunford Samuel Hall, and an appropriate bronze plaque memorializing the testator's benefactions be placed in a prominent place within the building, and if available, a portrait of the decedent also be hung in a prominent place in the building. . . .

And now, June 11, 1969, the account is confirmed nisi.