# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| VFW Home Association of Monroe, | : | |
| Petitioner | : | |
| | : | No. 1591 C.D. 2024 |
| v. | : | |
| | : | Submitted: March 3, 2026 |
| Patricia Hunter (Workers' | : | |
| Compensation Appeal Board), | : | |
| Respondent | : | |

BEFORE:    HONORABLE LORI A. DUMAS, Judge
HONORABLE MATTHEW S. WOLF, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                            **FILED: April 7, 2026**

VFW Home Association of Monroe (Employer) has petitioned this Court to review an adjudication of the Workers' Compensation Appeal Board (Board), entered November 1, 2024, which affirmed the decision of the Workers' Compensation Judge (WCJ) in favor of Patricia Hunter (Claimant). On appeal, Employer generally contends the WCJ's decision was unreasonable. We affirm.

## I. BACKGROUND[1]

Claimant worked eighteen years as a bartender for Employer. She worked four nights per week, and her closing duties included securing doors. Near the doors was a dolly loaded with folding tables. Notes of Testimony (N.T.), 5/10/23,

---

[1] Unless otherwise stated, we state the background based on the WCJ's and Board's decisions, which are supported by substantial evidence, and in the light most favorable to Claimant as the prevailing party. *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 583 (Pa. 2009) (*Cinram*).

at 9-10; N.T., 8/9/23, at 11.

In November 2022, Claimant stepped onto the pallet to ensure the doors were locked for the night. When she stepped down, her ankle became entangled in the rope attached to the dolly. Claimant tripped, "went flying," and fell on her face, right shoulder, and both knees. N.T., 5/10/23, at 12-13. She experienced a sharp pain in her right shoulder that radiated beneath her right shoulder blade to the mid-back. Both knees swelled immediately. Claimant went to the emergency room, returned home, "had trouble moving," and was on the couch for three weeks. *Id.* at 14. She did not return to work.

Claimant's manager, Colleen Hughes, learned of the fall that evening from a coworker named Anita, who reported that Claimant's knees appeared swollen and sore. Hughes communicated with Claimant by text through December 2022. Those texts mentioned Claimant's knees and back. N.T., 8/9/23, at 9, 12-16.

In late December, Dr. Robert Friedman diagnosed Claimant with acute right shoulder pain and rotator cuff strain, both deemed work-related. Dr. Friedman's physical exam did not evaluate whether a tear existed. In January 2023, Dr. Friedman again examined Claimant, which yielded the same diagnosis. *See* N.T. Grob Dep., 9/27/23, at 65. Dr. Friedman recommended "sedentary duty" and continued therapy. *Id.* at Ex. 3 (screenshot of Dr. Friedman's January 24, 2023 letter in a text from Claimant to Hughes). Hughes received a treatment note reflecting that shoulder diagnosis in January 2023. That note was the first communication to Employer indicating a right shoulder injury.

In February 2023, a physician examined Claimant for right shoulder pain. The physician ordered an MRI, which revealed a fully torn rotator cuff.[2]

---

[2] Simply, a fully torn rotator cuff is a "hole" in the muscle surrounding the shoulder. *Szelesi v. Allstate Ins. Co.* (Mich. Ct. App., No. 311279, filed Apr. 10, 2014), 2014 WL 1401860, *1.

Claimant testified she could not return to bartending because she could not lift her right arm to pour drinks. She acknowledged a prior right shoulder injury in 2011, also work-related and for the same Employer. Claimant testified she had never experienced shoulder pain like this before the November 2022 fall. Except when her back "flared up," Claimant worked full duty without restrictions from 2011 through November 2022. N.T., 5/10/23, at 11, 13, 17, 19; N.T. Cibischino Dep., 7/12/23, at 11.

Employer had originally acknowledged Claimant's injury as "knee inflammation" via an amended notice of temporary compensation payable.[3] Employer stopped compensation in February 2023 and denied ongoing disability, *i.e.*, in workers' compensation parlance, Claimant was able to work. Claimant filed a claim petition alleging injuries to her right knee, right shoulder, and back, and seeking temporary total disability benefits from November 2022 and ongoing. Cl. Pet., 4/19/23.

The WCJ held hearings at which Claimant and Hughes testified live, and Drs. Maurizio Cibischino and Robert Grob, the independent medical examiner, testified via trial deposition. Dr. Cibischino was board-certified in orthopedic surgery with a subspecialty in sports medicine, and shoulder injuries represented 65% of his practice. In April 2023, Dr. Cibischino examined Claimant, reviewed the MRI, confirmed the rotator cuff tear, and surgically repaired it. During surgery, he found multiple labral tears and a SLAP lesion, which he testified were "consistent with a fall on the shoulder or an outstretched arm while falling."[4] N.T. Cibischino

---

[3] Generally, a notice of temporary compensation payable permits an employer to temporarily pay the claimant without admitting liability.

[4] A labral tear is damage to the cartilage around the shoulder socket. A SLAP lesion is a "superior labrum anterior to posterior" tear, *i.e.*, a front-to-back tear in the cartilage surrounding the shoulder. *See generally Shoulder Injuries*, 43 Am. Jur. Proof of Facts 3d 201 (2025).

Dep. at 30; *id.* at 6-7, 9, 11, 14-19.

Regarding causation, Dr. Cibischino testified that Claimant's trip and fall was "consistent with what *could be* found as the cause of a rotator cuff tear." *Id.* at 25 (emphasis added). He could not specify whether Claimant struck her shoulder directly or fell on an outstretched arm; either mechanism could have caused her shoulder injury. *Id.* at 32-33 ("I don't know whether she struck her shoulder or whether she put her arm out, which is a natural reaction to try to prevent, you know, your face from hitting. But that certainly is consistent and often is consistent with the injury that she sustained. The fact is that she did not have shoulder problems before that fall, and she had shoulder problems after that fall. And so therefore, I'm going to conclude that the fall caused the shoulder problems.").

Employer asked Dr. Cibischino whether the shoulder pain and torn rotator cuff were "not related to the work injury." *Id.* at 30. He stated "that's not true. I wouldn't conclude that." *Id.* Employer repeatedly asked Dr. Cibischino about the mechanism of injury. *Id.* at 32-37. Dr. Cibischino consistently testified that Claimant's fall caused her shoulder injury and was unrelated to any preexisting condition or prior injury. *Id.*[5] Dr. Cibischino also disputed that degeneration could have caused the labral tears and SLAP lesion. *Id.* at 31.

Dr. Cibischino testified Claimant had not fully recovered and could not return to bartending. He anticipated restrictions for four to six months from the date of surgery, subject to modification based on Claimant's progress. When asked about Claimant's 2011 right-shoulder injury, Dr. Cibischino acknowledged Claimant's prior

---

[5] "Well, according to the medical record, which is the only thing I can go to this far away from her injury, I thought I was fairly specific that she tripped over a pallet of -- a pallet which had chairs on it. And when she tripped oftentimes, you know, it's a shock when you fall." N.T. Cibischino Dep. at 32-33 (agreeing with Employer "that the mechanism of injury of falling [onto] an extended hand can cause an acute rotator cuff tear").

4

history but noted she had worked without surgery from 2011 through 2022. He had not reviewed Dr. Friedman's records and thus declined "to comment on Dr. Friedman's [second] exam" in January 2023. *Id.* at 24-27, 32-33, 46, 52-53.[6]

Employer presented Dr. Grob, board-certified in orthopedic surgery, a general orthopedist whose practice included approximately 30% shoulder cases. Dr. Grob examined Claimant twice. At the first examination in January 2023, Claimant reported knee complaints. Dr. Grob did not examine the right shoulder; had Claimant reported a shoulder injury, he would have examined it. He diagnosed knee contusions and deemed Claimant fully recovered. N.T. Grob Dep., 9/27/23, at 10-11, 14, 17-18, 22.

At the second examination in June 2023, Claimant reported right shoulder pain and presented post-fall photographs of bruising on the front of her shoulder. Dr. Grob acknowledged the MRI showed a rotator cuff tear but opined the tear was not recent. He attributed the tear to preexisting conditions, specifically progressive degeneration, citing signs of long-term tendon deterioration and inflammation in the shoulder as indicators of chronic shoulder disease. Dr. Grob further testified that Claimant's fall could not have caused a sudden rotator cuff tear and would instead cause a bruise. On cross-examination, Dr. Grob admitted he had no records of any right shoulder treatment for Claimant before November 2022. He also admitted that Dr. Friedman had diagnosed Claimant with acute right shoulder

---

[6] Although Dr. Cibischino did not review Dr. Friedman's records, Employer's counsel stated that Dr. Friedman had found Claimant "had reached maximum medical improvement as of January 24, 2023" and asked Dr. Cibischino if he disagreed with that conclusion. N.T. Cibischino Dep. at 52. Dr. Friedman's January 24, 2023 note does not reflect "maximum medical improvement." *See* N.T. Grob Dep. at Ex. 3. Even the IME did not construe the note that way. *Id.* at Ex. 2 (summarizing the note as stating that "her right shoulder continues to progress with therapy and she was instructed to work sedentary duty. It summarizes that he thinks surgery is not required"). Regardless, Dr. Cibischino disagreed with that conclusion.

5

pain and rotator cuff strain in late December 2022. Dr. Grob agreed that if Claimant's shoulder surgery was successful, she would recover in roughly three to six months. *Id.* at 23, 26-27, 38, 44-48, 57, 60-61, 63-64.

The WCJ credited Claimant's undisputed testimony that she tripped, fell, and her face, right shoulder, and knees struck the ground. The WCJ found Dr. Cibischino more credible than Dr. Grob on the right shoulder, to the extent their testimony was inconsistent. The WCJ cited Dr. Cibischino's greater focus on shoulder injuries, his role as Claimant's treating surgeon, the absence of any pre-injury shoulder treatment records, and the fact that Claimant worked without restrictions before the fall and her left shoulder was normal after it. The WCJ rejected Dr. Grob's testimony on the right shoulder, noting that although Dr. Grob denied Claimant reported shoulder complaints at the January 2023 examination, he admitted that Dr. Friedman had diagnosed acute shoulder pain and rotator cuff strain. WCJ Op. at 5, 10-11. The WCJ granted the claim petition in part as to Claimant's shoulder, specifically a full rotator cuff tear with ongoing disability, but denied the claim as to the back and knee.

Employer appealed to the Board, arguing that Dr. Cibischino's testimony that Claimant's fall "could be" the cause of her shoulder injury was equivocal and thus legally incompetent. The Board held that the WCJ's finding that Claimant's fall caused her shoulder injury was supported by substantial, credited evidence of record. Regarding Dr. Cibischino's use of the phrase "could be," the Board reasoned that the phrase reflected the doctor's manner of speech after reviewing his testimony in its entirety. Bd. Op. at 8 (noting "Dr. Cibischino testified multiple times that the rotator cuff injury was work-related"). The Board thus affirmed. *Id.* at 1, 7-9. Employer timely appealed.

6

## II. ISSUE

Employer raises three issues, which we reorder for disposition. First, Employer asserts that Dr. Cibischino's testimony was legally incompetent. Employer's Br. at 4. Second, Employer contends that the WCJ's findings that the "mechanism of injury" was a rotator cuff tear and Claimant remains disabled are unsupported by substantial evidence. *Id.* Third, Employer claims that the WCJ capriciously disregarded "Dr. Grob's unrefuted testimony." *Id.*

## III. DISCUSSION[7]

### *A. Competency of Causation Testimony*

Employer asserts the Board erred in affirming the WCJ's causation finding because it rested on legally incompetent testimony. Employer advances two independent grounds: first, that Dr. Cibischino's "could be" testimony was equivocal; and second, that his opinion rested on an incomplete history because it did not account for a prior shoulder injury. *Id.* at 16-18.[8]

Claimant counters that Dr. Cibischino's testimony was unequivocal and legally competent, noting that the Board found he testified multiple times that the rotator cuff injury was work-related. As for the prior 2011 shoulder injury, Claimant emphasizes that she was asymptomatic for over 11 years and Dr. Grob himself lacked any pre-injury shoulder treatment records. Dr. Cibischino's post-surgical findings

---

[7] "Under the appellate standard of review pertaining to administrative agency adjudications, agency findings are subject to judicial review to assure that they are supported by substantial evidence. Substantial evidence is evidence which a reasonable mind would accept as adequate to support a conclusion." *Cinram*, 975 A.2d at 583 (citations omitted).

[8] Employer suggests that the record reflects that Dr. Cibischino understood Claimant fell three times. Employer's Br. at 18 ("Here the aforementioned description of the incident from Dr. Cibischino portrays three (3) falls, which is contrary to the undisputed mechanism of injury of Claimant tripping and falling onto her right shoulder." (citations omitted)). Claimant fell on her knees, face, and shoulder in the same incident. We disagree with Employer's strained characterization of Dr. Cibischino's testimony that Claimant fell three times.

7

were consistent with a fall on the shoulder or an outstretched arm, and the onset of symptoms following the fall further supported causation. Claimant's Br. at 44-47.

A "claimant has the burden of proving a causal relationship between a work-related incident and his alleged disability." *Lewis v. Com.*, 498 A.2d 800, 802 (Pa. 1985) (citations omitted). Where "no obvious causal connection" exists "between an injury and the alleged cause," unequivocal medical testimony must establish that connection. *Id.* (citation omitted). Unequivocal testimony expresses a "professional opinion [that] the result in question did come from the assigned cause."[9] *Id.* (citation omitted). Equivocal testimony, by contrast, "is less than positive or . . . based upon possibilities." *Id.* (citation omitted). Specifically, "statements that an assigned cause 'could have' been the cause of the condition have repeatedly been held to be legally insufficient." *Id.* at 803 (citation modified). Such equivocal testimony is incompetent. *See id.*

In assessing equivocalness, a tribunal reviews "the medical witness's *entire* testimony . . . taken as a whole and a final decision should not rest upon a few words taken out of the context of the entire testimony." *Id.* (emphasis added) (citation modified); *Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008) ("Medical testimony will be found unequivocal if the medical expert . . . testifies that in his professional opinion that he believes a certain fact or condition exists," but testimony is deemed "equivocal if,

---

[9] "There is a difference between an injury and its consequences, and tracing those consequences is often beyond the skill and experience of laymen since the answers can lay in complicated etiologies known only to experts. For example, if a man falls at work and cuts his arm he will not normally need medical testimony to prove that he was *injured* at work. But if a man claims that the injury to his arm rendered his hand worthless then medical testimony will generally be required to support such a claim since the relationship of the arm muscles to the function of the hand is not a subject about which lay witnesses can normally testify with expertise." *Cardyn v. Workmen's Comp. Appeal Bd. (Heppenstall)*, 534 A.2d 1389, 1390-91 (Pa. 1987) (emphasis in original).

after a review of a medical expert's entire testimony, it is found to be merely based on possibilities." (citation modified)); *Moyer v. Workers' Comp. Appeal Bd. (Pocono Mountain Sch. Dist.)*, 976 A.2d 597, 599 (Pa. Cmwlth. 2009) ("[T]here are no 'magic words' a medical expert must say to establish causation and reviewing bodies are not permitted to pick one or two sentences out of context—rather, the testimony as a whole must contain a requisite level of certainty necessary to deem it unequivocal." (citations omitted)).

*Lewis* applied these principles in considering a doctor's testimony that a claimant's work-related incident "could have" caused his neck condition. *Lewis*, 498 A.2d at 801-02. The doctor also testified that the claimant's neck injury "could have" been due to the "normal aging process or through repeated" prior, non-work-related trauma to the neck. *Id.* at 803. *Lewis* held that the testimony was equivocal because the doctor vacillated on whether the incident caused the claimant's injury. *Id.* The doctor never committed to either cause; he merely presented possibilities. *Id.*

Instantly, upon reviewing Dr. Cibischino's testimony as a whole, including his use of the phrase "could be" in describing causation, we agree with the Board that his testimony was unequivocal. First, unlike the doctor in *Lewis*, an obvious causal connection existed here, particularly given Claimant's post-fall photographs of bruising and her shoulder pain diagnosis several weeks after the fall. *Cf. Lewis*, 498 A.2d at 802. Second, even if the connection was not obvious, we decline to unduly emphasize Dr. Cibischino's use of the phrase "could be." N.T. Cibischino Dep. at 25 ("It is my considered medical opinion that the patient's mechanism of injury described with a trip and fall after tripping on a pallet of chairs and falling after that is, indeed, consistent with what could be found as the cause of

a rotator cuff tear."); *Lewis*, 498 A.2d at 802 (cautioning that a tribunal must review the testimony as a whole and not isolate two words from their context); *Moyer*, 976 A.2d at 599 (same). Third, unlike the doctor in *Lewis*, Dr. Cibischino did not vacillate. *See* N.T. Cibischino Dep. at 30-32. He explicitly ruled out Claimant's prior shoulder injury and degeneration as causes of her condition. *See id.* As he put it, Claimant had no shoulder problems including pain, before the fall, and had shoulder problems after it. *See id.* at 32-33.

### B. Substantial Evidence

Employer contends the Board erred in affirming the WCJ's finding that the fall directly caused Claimant's rotator cuff tear, as no substantial evidence supports that finding. Employer reasons that (1) Dr. Cibischino never connected the fall to an acute tear and conceded uncertainty about whether Claimant struck her shoulder or extended an outstretched arm; and (2) only Dr. Grob addressed the actual mechanism and opined the fall could not cause an acute tear. Employer further argues the Board erred in affirming ongoing disability because both experts projected full recovery within six months of surgery, yet Claimant remains unable to return to bartending. Employer's Br. at 12-16.

Claimant counters that the WCJ's findings were supported by substantial evidence and that credibility determinations are not subject to reweighing on appeal. Claimant maintains that Dr. Cibischino unequivocally connected the fall to the tear, the WCJ properly credited that testimony over Dr. Grob's contrary opinions, and that Claimant experienced shoulder pain immediately after the fall. As to ongoing disability, Claimant points to her undisputed testimony that she could not pour drinks and to Dr. Cibischino's opinion that she had not fully recovered. Claimant's Br. at 36-43.

10

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 943-44 (Pa. 2004) (citation omitted). Such evidence "must be both competent and sufficient." *Id.* at 944. The reviewing court ascertains "whether the evidence . . . is competent, and if . . . competent, whether it is sufficient to support the administrative finding." *Id.* (citation modified).

Instantly, substantial evidence supports the WCJ's causation finding. The WCJ credited Dr. Cibischino's testimony over Dr. Grob's on the shoulder, citing Dr. Cibischino's greater concentration on shoulder injuries, his role as the treating surgeon, the absence of pre-injury shoulder treatment records, and Claimant's unrestricted work history. *See* WCJ Op. at 10-11. The record also belies Employer's contention that only Dr. Grob addressed the "actual mechanism" of injury. Dr. Cibischino testified that Claimant's fall was consistent with a rotator cuff tear, whether she struck her shoulder directly or fell on the outstretched arm. *See* N.T. Cibischino Dep. at 25, 32-33. Regardless, the WCJ considered Dr. Grob's contrary opinion and rejected it. *See Gibson*, 861 A.2d at 943-44.

As for ongoing disability, the WCJ credited Claimant's testimony that she could not lift her right arm to pour drinks and Dr. Cibischino's opinion that she had not fully recovered. That both experts anticipated recovery within months of surgery does not undermine the WCJ's finding. It does not because Dr. Cibischino's estimate was subject to modification based on Claimant's progress and the WCJ, as factfinder, was entitled to credit Claimant's testimony of her condition at the hearing. Accordingly, substantial evidence supports the WCJ's finding of ongoing disability. *See id.*

### C. Capricious Disregard

Employer argues the WCJ capriciously disregarded Dr. Grob's testimony, rendering the decision unreasoned. Employer identifies two items that it contends were unrefuted: Dr. Grob's testimony that the MRI indicated a chronic shoulder injury, and Dr. Friedman's physical examination, which Employer characterizes as "negative for a rotator cuff tear." Employer's Br. at 21. Per Employer, the WCJ should have credited Dr. Grob's testimony because Dr. Cibischino never refuted the MRI interpretation and declined to address Dr. Friedman's examination. *Id.* at 18-21.

Claimant counters that the WCJ possessed "complete authority" over credibility determinations. Claimant's Br. at 48. Claimant maintains the WCJ thoroughly explained his reasons for crediting Dr. Cibischino and points to inconsistencies undermining Dr. Grob's credibility. Claimant argues Employer fails to demonstrate the willful and deliberate disregard required under the capricious-disregard standard. *Id.* at 48-50.

Capricious disregard exists when an "agency expressly refuse[s] to resolve conflicts in the evidence and make essential credibility determinations." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 486 & n.11 (Pa. 2002) (*Wintermyer*) (citing, *inter alia*, *In re Patterson's Est.*, 3 A.2d 320, 321 (Pa. 1939) (citing *In re Pusey's Est.*, 184 A. 844 (Pa. 1936)). Relatedly, capricious "disbelief is not merely disbelieving a witness. To constitute capricious disbelief there must be a [willful], deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth." *Pusey*, 184 A. at 850.

Instantly, the WCJ did not capriciously disregard Dr. Grob's testimony.

12

The WCJ detailed the testimony of Drs. Grob and Cibischino and explained why he credited Dr. Cibischino's opinion that Claimant's tear was caused by the fall and not chronic shoulder disease. *See* WCJ Op. at 9-11. Indeed, the WCJ credited Dr. Grob's testimony on Claimant's back and knee, which demonstrates that the WCJ considered Dr. Grob's testimony and exercised his authority to credit such testimony. *Id.* at 11; *Wintermyer*, 812 A.2d at 486.

As for Dr. Friedman's examination, Employer characterizes it as "negative for a rotator cuff tear." That characterization is misleading. Dr. Friedman diagnosed Claimant with acute right shoulder pain and rotator cuff strain, both deemed work-related. Grob Dep., 9/27/23, at Ex. 3. Dr. Friedman's examination did not evaluate whether a tear existed; the absence of an affirmative finding of a tear is not equivalent to a finding that no tear was present. Regardless, the WCJ credited the testimony and evidence that Claimant tore her rotator cuff. Further, Dr. Cibischino testified that he did not review Dr. Friedman's notes, and he understandably declined to address that examination.

## IV. CONCLUSION

For these reasons, we affirm the Board. At heart, this was a dispute about whether Claimant's condition was caused by her fall or a preexisting condition. The factfinder weighed the parties' competing evidence and found for Claimant.

_____
**LORI A. DUMAS, Judge**

13

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VFW Home Association of Monroe, | : | |
| Petitioner | : | |
| | : | No. 1591 C.D. 2024 |
| v. | : | |
| | : | |
| Patricia Hunter (Workers' | : | |
| Compensation Appeal Board), | : | |
| Respondent | : | |

# O R D E R

AND NOW, this 7th day of April, 2026, we AFFIRM the order of the Workers' Compensation Appeal Board, entered November 1, 2024.

**LORI A. DUMAS, Judge**